With that, we are ready for our first case, Nettles v. Midland Funding. Mr. Seitz. May it please the court, Ted Seitz, appearing on behalf of the appellant's defendants, Midland Funding, LLC and Midland Credit Management. This is an appeal from the district court's denial of a motion to compel arbitration. However, during the appeal briefing, there has been an issue raised by the FLE on Article 3 standing. This issue was briefly briefed before the district court, but never addressed in the district court's denial of the motion to compel arbitration opinion. So with that, I didn't know whether the court would like me to address the motion to compel arbitration opinion in that part of the appeal or the Article 3 standing. Jurisdiction is the first issue in every case, and so that's where you should begin. Well, Your Honor, thank you. With Article 3 standing, just to give some background on the timing here, while the motion to compel arbitration was pending before the district court, this court entered its opinion in Casillas, I think it was actually the same day as today, I think it was June 4th, 2019, which addressed Article 3 standing in FDCPA cases, including putative class action cases. So as far as the court or the defendants, we had not mentioned that to the district court as far as addressed Article 3 standing at that time. It kind of sat there for a little bit, and then the court issued its opinion on the compel arbitration piece. It appears to be that the plaintiff, FLE, concedes that under Casillas, she does not have Article 3 standing to advance her FDCPA claim in this case. And in the briefing, there was a mention or request that instead Casillas be taken before the whole entire en banc of the Seventh Circuit to address standing as the court as a whole. We do mention our opinion on that in our reply brief, and that we don't see any reason for that to occur. At the time, Casillas did come out on Article 3 standing. There was a request to bring it before the entire Seventh Circuit because it was viewed to be in conflict with an opinion from the United States Sixth Circuit Court of Appeals, titled Macy GC Services. That was not accepted, and so Casillas, we believe, continues to remain good law. And in fact, I think as we mentioned in our briefing before the court, we don't believe, actually, that the Sixth Circuit is in disharmony with the Seventh Circuit on Article 3 standing. Could I interrupt you just to ask a question? Yeah. I mean, this is different than Casillas, because in Casillas, there was an omission of information that was supposed to be in a form, and Casillas didn't allege that she suffered any harm from that omission. This is different because Midland sent a letter that dealt more specifically with Nettles, misstating the amount of her debt. And one thing I wanted to clarify that wasn't entirely clear to me, Midland never tried to correct that, right? Because it had actually underreported the amount that she owed to the credit agencies, is that correct? That's correct, Your Honor. So was this letter simply an informative letter, or was it an attempt to get this money from Nettles? Well, I think it was a little bit of both, Your Honor. This arose from a consent judgment in Michigan State Court, in which Midland was represented by a law firm, which actually no longer is around, Hess & Miller. And so once that occurred, Midland took over the debt and sent out a letter, and it was labeled a welcome letter. So in a sense, it was informative, because there was a consent judgment in place, but I think also, as well, it was an attempt to collect on that consent judgment as well. Okay. So, and I don't think that our client disputes that piece, that the letter, while it was a welcome letter saying, yes, we have now taken the lead on your account, that we owed any way we had the judgment in, we are also trying to collect that amount. So you are correct. But you never tried to do anything more after sending that letter to get that amount from Nettles? Not that I'm aware of, Your Honor. I mean, there was some garnishments in the Michigan State Court. It's actually a subject of another class action that's currently pending in the Eastern District of Michigan. But that was it, Your Honor. And so it was a misstatement on the balance, incorrect balance on that letter. But it was a welcome letter once business credit management received it. Okay. Thank you. Yes. Just to get back to the Article III standing piece in the Sixth Circuit Court of Appeals being different than the Seventh Circuit, there have been some subsequent cases in the Sixth Circuit in a decent amount dealing with Article III standing. There was the Haggie decision, and there was the Huff-Telichek decision, and then recently the Buchholz decision. All of those appear to put more clarity on what Macy did and did not stand for. And it appears that now the Sixth Circuit is in harmony with Casillas, we would argue, and the standard that no harm, no foul, and if there's no injury arising from a statutory claim, just because it's a statutory claim, there cannot be Article III standing. And so with that, you know, certainly... This is just like, so what is your position about whether the plaintiff has standing? Our position is that the plaintiff does not have standing under Casillas. We take the plaintiff's counsel, plaintiffs, at their word that they don't, and I believe that to be the case, especially, I guess, even more supported on just the Article III standing issue by the U.S. Supreme Court's opinion issued Monday of this week in the Seoul v. U.S. Bank case, which, while it is an ERISA case, it provides some more clarity on Article III standing and statutory causes of action. In fact, tried to simplify that and take it from Spokio. So with that, and I don't know how much time I have left. You have exactly two minutes left. Thank you, Your Honor. With that, on the motion to compel arbitration, the district court denied it based on the fact that it did not believe that the dispute was in the scope of the arbitration provision, meaning that a consent judgment was somehow different than an account. But as we set forth in our brief, we think that was certainly an error, especially when looking at the United States Supreme Court precedent, this court's precedent, that arbitration provisions are meant to be broadly construed, really the consent judgment related to the account. And there is case law from this circuit as well, the Gore v. Telecheck case and the case from, I think, 1987, the Nero case, that deals with, you know, two agreements or a settlement agreement and saying those also can be enforceable by an arbitration provision. So with that, I would just reiterate that we ask that the district court's opinion be reversed and the case remanded. However, if there is no Article III standing in the court, it should dismiss the case as well. Thank you, Your Honor. Thank you, counsel. Mr. Warner. Good morning. May I please the court? I will address standing first and then to the merits. Plaintiff's response did not concede a lack of standing. Plaintiff's response, briefed here and below, asserted that Article III standard requirements were satisfied applying Spokio. As Midland's violation of the FDTPA falls under the prohibition that a debt collector may not attempt to collect more money than what the debt collector owes, a personal right afforded to her under the Act. Seeking more money than owed is akin to the common law torts of malicious prosecution.  Counsel? Yes. Counsel? Yes. The question I have is whether you believe your position on standing is consistent with Casillas. Casillas is different in that it's a no harm, no foul standard, which I guess we do disagree with the no harm, no foul standard. It's inconsistent with Spokio. It's also now inconsistent with Vallejo. Counsel, I would like you to address my question, which is whether your position that your client has standing is consistent with Casillas. You have asked us to overrule that decision, which implies that you can't win unless it is overruled, and I wonder if that's your understanding. Well, judges disagree a lot of times, even at the Supreme Court at a five to four. We said that there's the potential. We see how that Casillas could be read in a manner by some of the district court judges that would indicate that the plaintiff does not have standing in this case. And then later on, followed by Judge Wood's opinion that she issued in Lavalier, sees even the part by Casillas where the court then looks at the totality of the circumstance. Counsel, the opinions speak for the court. They do not speak for their authors. Correct. It is not Judge Wood's opinion. It is the Seventh Circuit's opinion. Counsel, this is Judge Barrett. I'm very confused by your argument, I have to say, because I read your brief the way that Judge Easterbrook is characterizing it to you. I read it as asking us to overrule Casillas and conceding that your client had suffered no harm. Am I understanding your position correctly? No, that's not correct. I stated it that way, Your Honor. The plaintiff was merely stating that there is a concern regarding the dearth of guidance in the circuit evaluating Article III standing requirements. The plaintiff asserts here that there are two main ways in which Ms. Nettles has satisfied Article III standing requirements and that these should be addressed to have a consistent guideline for practitioners on both sides to understand. The plaintiff's brief is that, look, under Spokio, Justice Thomas' concurrence, if Congress has created a private right of duty owned personally by the plaintiff, then the violation of that legal duty suffices for an Article III entry fact, a concrete entry. Counsel, that line of argument is the argument taken by the dissent in Seoul against U.S. Bank. We're obviously going to follow the majority of the Supreme Court. Unfortunately, Your Honor, I haven't had it. Counsel, if it's not sufficient just to say, well, we have a statutory right, therefore we have standing, that you need to show harm, injury in fact, what, in your view, is the injury in fact? Well, here the injury in fact was that when she received the letter, there was a confusing statement about the amount of money that was owed. She's not, Millon's not decided. Look, maybe I'm not clear. I'm not asking you to describe what the defendants did. I'm asking you to describe how the plaintiff was injured. How the plaintiff was injured was that she received an untruthful communication demanding more money than what she owed. That is the injury in fact. I'll try once more. In a standard tort case, it isn't sufficient to say something like, the defendant was speeding. It isn't even sufficient to say the defendant was speeding and hit my car. You say something like, the plaintiff suffered an injury and went to the hospital and spent money and lost time from work. That is, you describe how the plaintiff was injured, rather than what the defendant did to cause the injury. Could you please describe how, in your view, the plaintiff was injured? Yes, Your Honor. She receives the letter that says that she demands, demanding more money than what she assumed she had entered into a consent judgment. She goes to her attorney's, you know, gets the letter to her attorney. She's upset about it. She doesn't understand her rights. She has to consult another attorney, her attorney again, to find out what's going on. Why is it this way? She tried to make payments. They stopped unilaterally, and this is the first letter she gets, demanding more money than what she owes. She's completely confused of her rights. She changed her course of action of just waiting around to pay the amount that she was owed, waiting for someone to tell her who she had to pay, and she has to go consult an attorney. So there's a change of course of behavior in which she had, which would follow your example that was provided, is that, you know, there was something different that she did out of the ordinary course that changed her behavior. I mean, it is the minimus, and that's why we're seeking statutory damages for loss of time, for irritants, for annoyance. I mean, the court, some circuit has said, like, for example, in CCPA cases, that annoyance alone is sufficient for standing. And this is the same that can be applied to all consumers. When you analyze a CCPA case. I'm a little, counsel, I'm a little worried about the contention that consulting an attorney is an injury that affords Article III standing, because then they're standing in every case. The plaintiff and facilities consulted an attorney. The plaintiff and FOLE consulted an attorney. Couldn't those cases on that view have found standing? Your Honor, unfortunately I haven't read FOLE. I haven't seen it come out, and no supplemental authority was filed by the defendant. So I apologize for not knowing what FOLE is, and maybe I need to submit supplemental briefing on the issue of standing after the Supreme Court's opinion that just came out on Monday. She goes to the attorney because, it's not that she just hands a letter to the attorney. There's an issue. She wants to know what her rights are. Why isn't the consent judgment of what she agreed to being applied? Why does Midland want to collect more money here? So there is, that is a basis for a injury in fact. So you're saying the injury was that she was upset and confused and fearful that she owed the higher amount. Well, those are feelings. But you would, if you look at the, this Court's opinion in Lavalier is that if you can look at what a reasonable, unsophisticated consumer might react to in such a letter, that is the standard. So you can't look just at the plaintiff themselves at what happened. You would have to look at would a unsophisticated consumer receiving a letter that tells them that they owe more money. The reasonable unsophisticated consumer standard is about how we interpret the language that they receive. It's not about defining the injury in the way that you're describing it. I mean you said that an irritant was enough to constitute a concrete injury. So here you're saying that she was irritated. She was upset, confused. You tied it to an emotion, right? Irritation? Yes. But I'm just also saying the standard because when you look at class actions, I mean this is going to be something that is going to be equally applicable to an unsophisticated consumer using an objective standard as what does the conduct create. The whole thing about class actions is you don't look through individualized parts. Counsel, you have one minute left. If there are no questions, I'm standing. If I could just briefly discuss the merits. As to the merits, the district court was correct to deny arbitration. The consent judgment is an ovation. It is under Michigan law. The cases that Midland has cited, especially like Gore v. Alltel Communications, this court has given a hypothetical that states that if it arises out of a contract without an arbitration agreement, you can't compel arbitration. That's this case. Garcia raised the exact same thing at the point of state. Midland v. Williams, they actually misstate the entire case. If you look at the federal court's document, Nero is implicable. That's also, it doesn't take into account that there was an ovation. If there's nothing further, I conclude. Thank you very much, counsel. Mr. Seitz, you've got about 30 seconds left. Your Honor, I really have nothing further. With the court's permission, I will rest on my argument. Certainly, counsel. Thank you very much.